UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION** | **Civil Action No. 18-cv-1830 (GHW)** |
| **Plaintiff,** | |
| **v.** | **PLAINTIFF'S MEMORANDUM IN SUPPORT OF DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF** |
| **LON OLEN FRIEDRICHSEN** | |
| **Defendant.** | **ECF CASE** |

Pursuant to Local Rule 55.2(b) and Federal Rule of Civil Procedure 55(b), Plaintiff Commodity Futures Trading Commission ("Plaintiff," "CFTC," or "Commission") respectfully requests that the Court enter final judgment by default against Defendant Lon Olen Friedrichsen ("Defendant" or "Friedrichsen").

# **TABLE OF CONTENTS**

I.     BACKGROUND..................................………………….………………..2

II.    STATEMENT OF FACTS.......................................…..………………….4

III.   ARGUMENT……………………………………………………………….7

   A.  Jurisdiction……………………………...................……………………….7

   B.  Defendant's Failure to Answer or Otherwise Defend this Action Warrants Entry of Default Judgment………………...…………………...............………………...7

       1.  The Commission's Allegations Against Defendant Are Sufficiently Alleged...............9

          a.  Defendant Violated 7 U.S.C. § 6m(1) (Count III): Acting as an Unregistered Commodity Trading Advisor.................................................9

          b.  Defendant Violated 7 U.S.C. § 6b(a)(1) (Count II): Fraud in Connection with Commodity Futures Contracts..............................……...............................10

          c.  Defendant Violated 7 U.S.C. § 6$o$(1)(A) and (B) (Count I): Fraud by a Commodity Trading Advisor...................................................…….12

       2.  Entry of Default Judgment Against Defendant is Warranted......................................13

          a.  Defendant's Default Was Willful......................................................................14

          b.  Defendant Has No Meritorious Defenses to the Commission's Claims.................................................................................................15

          c.  The Commission Will Suffer Prejudice If Default Judgment Is Not Entered.......15

   C.  Remedies and Damages………………………………..........................……...17

       1.  Permanent Injunction………………………………….......................….....17

       2.  Restitution, Civil Monetary Penalty, and Post-Judgment Interest…...........................19

          a.  Restitution……………………........................……………………….20

          b.  Civil Monetary Penalty………………….........................……………….20

          c.  Post-Judgment Interest………………………………………………….22

IV.   CONCLUSION……………..........................…………………….........22

# TABLE OF AUTHORITIES

## CASES

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F. 2d 61 (2d Cir. 1981).....................................................14

*CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242 (2d Cir. 1986).....................................................17

*CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104 (S.D.N.Y. 1998)..................................................11

*CFTC v. Dean*, No. 18-cv-00345, 2018 WL 4573029 (E.D.N.Y. July 9, 2018).........................21

*CFTC v. EJS Cap. Mgmt., LLC*, No. 14 CV 3107, 2015 WL 13359358 (S.D.N.Y. Dec. 18, 2015)..............................................................................................................................................9

*CFTC v. Hales*, No. 12-CV-415, 2013 WL 12141329 (D. Utah May 13, 2013).........................9

*CFTC v. Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482 (S.D.N.Y. 2004).......................10, 11

*CFTC v. Kelly*, 736 F. Supp. 2d 801 (S.D.N.Y. 2010)..................................................................18

*CFTC v. Levy*, 541 F.3d 1102 (11th Cir. 2008)............................................................................20

*CFTC v. McDonnell*, 2018 WL 4090784 (E.D.N.Y. Aug. 28, 2018)............................................18

*CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669 (S.D.N.Y. 1979)...............................17

*CFTC v. Muller*, 570 F.2d 1296 (5th Cir. 1978)..........................................................................17

*CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321 (11th Cir. 2002).............................................10, 11

*CFTC v. Rosenberg*, 85 F. Supp. 2d 424 (D.N.J. 2000).........................................................17, 18

*CFTC v. U.S. Metals Depository Co.*, 468 F. Supp. 1149 (S.D.N.Y. 1979)................................17

*CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000)..........................................................................11, 13

*CFTC v. Weinberg*, 287 F. Supp. 2d 1100 (C.D. Cal. 2003).......................................................11

*CFTC v. Yorkshire Grp., Inc.*, No. 13-CV-5323, 2016 WL 8256380 (S.D.N.Y. Aug. 19, 2016)............................................................................................................................................21

*Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983)............................................................................16

*Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009).................................................................7, 19

*First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334 (6th Cir. 1987)...........................11, 13

*Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38 (2d Cir.1989).............................................19

*Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015).....................................................13, 19

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155 (2d Cir. 1992)…………………………………………………………………...………......………7, 8

*H. Daya Intern. Co., Ltd. v. Do Denim LLC*, No. 11 Civ. 4028, 2012 WL 2524729 (S.D.N.Y. June 29, 2012)................................................................................................................................16

*Loginovskaya v. Batratchenko*, 936 F. Supp. 2d 357 (S.D.N.Y. 2013)...................................15, 16

*Mason Tenders Dist. Council v. Duce Const. Corp.*, 2003 WL 1960584 (S.D.N.Y. Apr. 25, 2003)...............................................................................................................................13

*New York v. Green*, 420 F.3d 99 (2d Cir. 2005)......................................................................15

*O'Callaghan v. Sifre*, 242 F.R.D. 69 (S.D.N.Y. 2007)..............................................................13

*Robinson v. Sanctuary Music*, 383 Fed. App'x. 54 (2d Cir. 2010)..............................................16

*Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105 (2d Cir. 1986)....................................................11

*Schwartz et. al v. O'Grady*, No. 86-CIV-4243, 1990 WL 156274 (S.D.N.Y. Oct. 12, 1990).....................................................................................................................................12

*SEC v. Fortitude Grp., Inc.*, C.A. No. 16-50, 2017 WL 818604 (W.D. Pa. Feb. 10, 2017)..........16

*SEC v. Johnson*, No. 03 Civ. 177, 2006 WL 2053379 (S.D.N.Y. July 24, 2006).......................21

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998).......................................................................15

*Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610 (2d Cir. 1999)..................................13

*Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251 (9th Cir. 2004)..........................15, 16

*United States v. Myers,* 236 F. Supp. 3d 702 (E.D.N.Y. 2017)....................................................16

*Verizon Directories Corp. v. AMCAR Transp. Corp.*, No. 05-CIV-08867, 2008 WL 4891244 (S.D.N.Y. Nov. 12, 2008).........................................................................................8, 19

## STATUTES

7 U.S.C. § 1a (2012)…………………………………………………..................………….9

7 U.S.C. § 6b (2012)………………………………………..............…………….passim

7 U.S.C. § 6m (2012)………………………………..............………………......passim

7 U.S.C. § 6*o* (2012)………………………………………….................………….passim

7 U.S.C. § 13a-1 (2012)……………………………………………................…………passim

28 U.S.C. § 1331 (2012)..............................................................................7

28 U.S.C. § 1345 (2012)..............................................................................7

28 U.S.C. § 1961(a) (2012)……………………………………….....……………...............…22

## REGULATIONS

17 C.F.R. § 143.8 (2018)……………………………………………...........…………….......20, 21

## COURT RULES

Fed. R. Civ. P. 12.................................................................................................................2

Fed. R. Civ. P. 36.........................................................................................................3, 8, 12

Fed. R. Civ. P. 55..........................................................................................................passim

## I.    BACKGROUND

On March 2, 2018, the Commission filed a Summons ("Summons," ECF No. 8) and a

Complaint against Defendant for violating Sections 4*o*(1), 4b(a)(1), and 4m(1) of the Commodity

Exchange Act ("Act"), 7 U.S.C. §§ 6*o*(1), 6b(a)(1), 6m(1) (2012), ("Complaint," ECF No. 9).

On March 8, 2018, Plaintiff's process server personally served Defendant with a copy of the

Summons, Complaint, and all associated papers, at his residence at 104 Cambier Drive, Alton,

Iowa 51003.  (ECF No. 12); Initial Pretrial Conference Hearing Transcript ("Conf. Tr.," ECF No.

29), at 19:2-3 (May 21, 2018) (Friedrichsen admits that "When I received the summons on

March 8 . . . .").  On March 13, 2018, Plaintiff filed proof of service with the Court.  (ECF No.

12).

Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i) and the Court's Order dated

March 13, 2018 (ECF No. 12), Defendant was required to file an answer to the Complaint, or

other responsive pleading, by March 29, 2018.  Defendant did not answer or otherwise respond

to the Complaint by this deadline.  To the contrary, on or about May 1, 2018, Defendant wrote in

a letter to the Court, "I beg of you to just file judgment by default and demand for the relief in

the complaint."  (ECF No. 27 at 2).

On May 21, 2018, Defendant appeared at the Initial Pretrial Conference ("Conference")

and represented to the Court that he did not intend to defend himself in this action:

> The Court:  *If you wish to defend yourself in this case—in other words, if you wish
> to guard against the prospect for entry of a default judgment against you—you
> must answer the complaint*. . . .  Do you wish for me to extend the deadline for
> you to answer the complaint?
>
> Mr. Friedrichsen:  No, your Honor.

(Conf. Tr. at 25:7-15 (emphasis added); *see also* Conf. Tr. at 12:8-9 (the Court states, "[w]hat I

understand Mr. Friedrichsen to be saying is that *he does not want to participate in this*

*litigation*.") (emphasis added); Conf. Tr. at 25:17-20 (the Court instructs Defendant that "plaintiff may seek to hold you in default and then seek entry of a default judgment *on the basis of the fact that you are intentionally choosing not to defend yourself in the case*.") (emphasis added)).

In fact, during the Conference, Defendant requested—now for a second time (*see* ECF No. 27 at 2)—that the Court enter a default judgment against him:

> The Court:  With all of that, Mr. Friedrichsen, is there anything that you'd like to tell me about the case as a whole? . . .
>
> Mr. Friedrichsen:  I would like to make one basic statement. . . .  I'd like to put in a motion to have default judgment.

(Conf. Tr. at 7:4-12).

At Plaintiff's request, the Court set a discovery schedule for this case, which closes on November 2, 2018 (ECF No. 28).  Defendant has failed to participate in discovery.  On June 1, 2018, Plaintiff served on Defendant a proposed protective order, initial disclosures, interrogatories, and a request for production of documents, but Defendant has not responded to these discovery requests.  Further, on August 16, 2018, Plaintiff served on Defendant its requests for admissions of fact ("RFAs").  Defendant did not respond to the RFAs within thirty days, making them deemed admitted under Federal Rule of Civil Procedure 36(a).  Finally, while Plaintiff deposed four witnesses and despite being served with copies of the subpoenas, Defendant did not participate in these depositions.

On October 25, 2018, Plaintiff requested a Clerk's Certificate of Default pursuant to Federal Rule of Civil Procedure 55(a) (ECF No. 35), which the Clerk of the Court issued that same day.  (ECF No. 37).  Plaintiff now seeks by order to show cause a default judgment against Defendant pursuant to Federal Rule of Civil Procedure 55(b).

## II.    STATEMENT OF FACTS

As alleged in the Complaint, incorporated herein by reference, from at least June 25, 2014, through June 30, 2018 (the "Relevant Period"),[1] Defendant (1) fraudulently solicited customers for the purpose of trading West Texas Intermediate ("WTI") crude oil futures contracts on their behalf, in violation of Sections 4o(1) and 4b(a)(1) of the Act, 7 U.S.C. §§ 6o(1), 6b(a)(1) (2012); and (2) in so doing, acted as an unregistered commodity trading advisor ("CTA"), in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012). (Compl. ¶ 1).

During the Relevant Period, Defendant solicited clients for his fraudulent scheme via Craigslist.com ("Craigslist") advertisements, telephone, and e-mail. (Compl. ¶ 3). Defendant, without registering with the Commission as a CTA, posted advertisements to the general public on Craigslist in which he held himself out as a commodities trader. (Compl. ¶ 10). These advertisements targeted prospective customers throughout the country, including in New York, New York. (Id.; Exs. F & I).[2] Defendant's Craigslist advertisements stated that he would trade WTI crude oil futures on behalf of customers in exchange for 50% of any profits generated by his trades. (See, e.g., Compl. ¶¶ 11, 16, 32; Exs. F & I). When a customer contacted Defendant, he directed them to provide him with log-in credentials to their personal trading accounts, which were held at various futures commission merchants ("FCMs"). (See, e.g., Compl. ¶ 29; Vilenskiy Decl. ¶¶ 5, 15, 39; Ex. G ¶ 11; Ex. N ¶ 13).

Defendant knowingly and routinely made materially false and misleading statements in his Craigslist advertisements and in subsequent communications with customers for the purpose

---

[1] During discovery, Plaintiff identified fraudulent conduct by Defendant that extended beyond May 24, 2017, the end date of the Relevant Period identified in the Complaint. (See Compl. ¶ 1).

[2] All exhibits referenced herein are attached to the Declaration of Dmitriy Vilenskiy ("Vilenskiy Decl."), dated October 29, 2018, and submitted herewith.

of obtaining control over their futures trading accounts.  For example, Defendant's Craigslist posts typically guaranteed ten percent daily returns on futures trading, which he knowingly failed to achieve.  In addition, Defendant falsely represented both his trading experience and the amount of money he managed.  Examples of Defendant's materially false and misleading solicitations include the following:

- September 23, 2015: "10% ROI [Return on Investment] daily!!  I currently trade over $5 mil and am looking to expand up to $100mil.  Do you want to make these kinds of returns?"  (Compl. ¶ 11).

- January 21, 2016: "What I do is trade futures (wti) for myself and a select few other individuals.  You would open your own account, fund the account, I would trade the account and we would split the profits 50/50… Net result is over 10% net profit per day."  (Compl. ¶ 32).

- May 16, 2016: "I currently day trade over $10 million in the crude oil market.  I have been blessed with tremendous results and profit.  Allow a professional to make money for you."  (Compl. ¶ 14).

To induce certain customers to provide Defendant with access to their accounts and to permit him to trade futures contracts on their behalf, Defendant sent them false trading reports demonstrating highly profitable trading.  (Compl. ¶¶ 21, 48; Vilenskiy Decl. ¶¶ 37, 62; Ex. J at 9; Ex. N at 11).  Many of these reports represented that Defendant managed tens of millions of dollars in assets and rarely executed losing trades.  (Vilenskiy Decl. ¶¶ 4, 38; Ex. G ¶ 9; Ex. N ¶ 11).  In reality, Defendant did not manage tens of millions of dollars in assets and the trades he executed in customers' accounts generated excessive losses.  (Compl. ¶ 28).

When Defendant failed to achieve the "guaranteed" daily returns, he promised customers that he would repay them, but he never did.  (Compl. ¶ 34).  To further create the illusion that he operated a larger, more established business, Defendant falsely represented to customers that he had offices in Sioux City, Iowa, and Denver, Colorado; that he had employees trading under his direction; and that he was a professional, licensed futures trader.  (Compl. ¶¶ 18-19, 24;

Vilenskiy Decl. ¶ 22; Ex. L. ¶¶ 7-9, 11; Ex. R at 34:3-11).  All of these representations were false and fraudulent and were designed to entice customers to provide Defendant with access to their commodity trading accounts.  (Compl. ¶¶ 18, 24).

To perpetrate his fraud and evade detection by regulators, Defendant disguised his identity through the use of multiple pseudonyms (Compl. ¶ 9)[3]; failed to obtain written investment discretion from his customers, in violation of Commission Regulations (Compl. ¶ 29); and in some instances, instructed customers to conceal from their brokers that Defendant traded their accounts (*See* Ex. R at 54:9-55:1).  Contrary to his representations to customers, Defendant was not registered with the Commission in any capacity during the Relevant Period. (Compl. ¶¶ 2, 18, 27, 40, 53).

Defendant's fraudulent conduct persisted *even after* he was served with the Commission's Complaint on March 8, 2018, at which point he was on notice that his conduct was unlawful.  For example, Defendant traded the accounts of two customers—Oscar Villamisar and Robert Sharp—into late March 2018 and continued to provide trading advice to Terrence Moses through June 2018, despite neither being registered as a CTA during that period nor obtaining written investment discretion over the customers' trading accounts.  (Vilenskiy Decl. ¶¶ 14; Ex. C; Ex. R. at 107:2-113:8).

Through his fraudulent misrepresentations and omissions, and his trading and management of customers' accounts as an unregistered CTA, Defendant caused at least 41 customers to suffer losses of at least $591,570 during the Relevant Period.  (Vilenskiy Decl. ¶ 9; Ex. A).

---

[3] During discovery, the Commission discovered additional pseudonyms used by Friedrichsen during the Relevant Period, including the fake names "Lon Frederick" and "William Richardson."  (Vilenskiy Decl. ¶¶ 10, 46; Ex. L ¶¶ 7, 8, 9, 11).

# III.   ARGUMENT

## A.   Jurisdiction

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  (Compl. ¶ 6).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012), authorizes the Commission to seek injunctive and other relief in a United States district court against any person whenever it appears to the Commission that such person has violated the Act or Commission Regulations.  (*See id*.)

Venue properly lies with this Court because Defendant conducted business relevant to this action in this District.  For example, Defendant directed his Craigslist advertisements to customers located in New York, New York; he traded WTI crude oil futures on the New York Mercantile Exchange; and he traded futures contracts on behalf of at least one customer residing in New York, New York.  (Compl. ¶¶ 7, 9-10; Vilenskiy Decl. ¶¶ 21(a)-(b); 35; Ex. I).

## B.   Defendant's Failure to Answer or Otherwise Defend this Action Warrants Entry of Default Judgment

Once a party has been placed in default pursuant to Federal Rule of Civil Procedure 55(a),[4] the non-defaulting party may move the Court for a default judgment.  FED. R. CIV. P. 55(b).  A party's default constitutes a concession of all well-pleaded allegations, except those relating to the amount of damages.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that on a motion for default judgment, a court "is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor").  Only in "very narrow,

---

[4] The Clerk of the Court placed Defendant in default on October 25, 2018 (ECF No. 37).

exceptional circumstances" will a factual allegation be found not to be sufficiently alleged for the

purposes of default judgment. *See Verizon Directories Corp. v. AMCAR Transp. Corp.*, No. 05-

CIV-08867, 2008 WL 4891244, at *2 (S.D.N.Y. Nov. 12, 2008).

In its Complaint, the Commission has more than adequately pled that Defendant, through

his material false statements and omissions to customers, and conduct requiring registration as a

CTA, violated 7 U.S.C. §§ 6b, 6*o*(1) and 6m(1) of the Act.  Defendant's willful refusal to

respond to these well-plead claims makes them deemed admitted.[5]  *See Greyhound*, 973 F.2d at

158.  For example, Defendant has conceded that:

- "Friedrichsen cheated or defrauded, or attempted to cheat or defraud, people in connection with orders to make, or the making of, contracts of sale of a commodity in interstate commerce or for future delivery made on or subject to the rules of a DCM, for or on behalf of those people.  He willfully deceived or attempted to deceive people, by, among other things, making false statements and omissions regarding his trading successes, guaranteeing trading profits, and providing false reports or statements to at least one prospective client. . . . *[in] violation of Section 4b(a)(1) of the Act*."  (Compl. ¶ 48 (emphasis added)).

- "through the use of the mails or other means of interstate commerce, Friedrichsen acted as a CTA. . . .  Friedrichsen used the mails or other means or      instrumentalities of interstate commerce (including internet, telephone, and e-mail, among others) to employ devices, schemes, or artifices to defraud clients and participants as well as prospective clients and participants.  Further, he engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon his clients and participants as well as his prospective clients and participants. . . . *in violation of Section 4o(1) of the Act*."  (Compl. ¶¶ 43-45 (emphasis added)).

- "through the use of the mails or other means of interstate commerce, Friedrichsen acted as a CTA without being registered.  Friedrichsen held himself out as a CTA by soliciting members of the general public via Craigslist and other means, trading their accounts via registered entities, and receiving compensation for his services, all *in violation of Section 4m(1) of the Act*.  Friedrichsen does not satisfy the exceptions to Section 4m(1) of the Act because he held himself out generally to the public as a CTA."  (Compl. ¶¶ 53, 54) (emphasis added).

---

[5] Pursuant to Federal Rule of Civil Procedure 36(a), each of the Plaintiff's RFAs are also deemed admitted because Defendant did not answer or otherwise respond to the RFAs within thirty days of being served.

And tellingly, when the Court asked Defendant at the Conference whether he wished to comment on the Commission's case, Defendant did not deny fraudulently soliciting clients or acting in a manner requiring registration with the Commission.  Instead, while claiming that he did not affirmatively represent to customers that he was a CTA, he conceded that "funds were lost, and . . . I'd like to put in a motion to have default judgment."  (Conf. Tr. 13:8-10).

1.    **The Commission's Allegations Against Defendant Are Sufficiently Alleged**

a.    Defendant Violated 7 U.S.C. § 6m(1) (Count III):
        Acting as an Unregistered Commodity Trading Advisor

Section 1a(12)(A)(i) of the Act, 7 U.S.C. § 1a(12)(A)(i) (2012), defines a CTA as "any person who for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or advisability of trading in" futures contracts.  A person using the mails or any means or instrumentality of interstate commerce in connection with engaging in such business as a CTA is required to register with the Commission unless he provides trading advice to fewer than fifteen people in the preceding twelve months _and_ does not hold himself out generally to the public as a CTA.  Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012); _see also CFTC v. EJS Cap. Mgmt., LLC_, No. 14 CV 3107, 2015 WL 13359358, at *7 (S.D.N.Y. Dec. 18, 2015) (entering default judgment for, among other things, violations of 7 U.S.C. § 6m(1) where defendant exercised discretionary trading authority over customer accounts in connection with retail forex transactions without being registered, or being exempt from registration, as a CTA); _CFTC v. Hales_, No. 12-CV-415, 2013 WL 12141329, at *5 (D. Utah May 13, 2013) (entering default judgment against defendant for, among other things, violating 7 U.S.C. § 6m(1) where defendant was not registered with the Commission but "held himself out generally to the public as a CTA in that he solicited clients to

open individual managed accounts that he would trade in exchange for 50% of any profits earned in the accounts").

During the Relevant Period, Defendant acted as a CTA by soliciting members of the general public via Craigslist posts and other means; trading customer accounts on futures exchange known as a designated contract market ("DCM"); and receiving compensation from customers in exchange for trading their accounts.  (Compl. ¶¶ 2-3, 10-40).  To effect this scheme, Defendant used the means of interstate commerce by, among other things, posting advertisements on the Internet; communicating with customers by e-mail, text message, Skype, and telephone; executing trades on a DCM; and accepting fees via wire transfer.  (Compl. ¶¶ 2-3, 10-40; Vilenskiy Decl. ¶¶ 21-22, 26, 34, 37, 47, 56, 60, 62; Ex. F; Ex. G ¶ 5; Ex. I; Ex. L ¶ 15; Ex. N ¶¶ 11, 17).  Defendant's failure to register with the Commission as a CTA prior to performing these and other acts alleged in the Complaint violated 7 U.S.C. § 6m(1).

> b.   Defendant Violated 7 U.S.C. § 6b(a)(1) (Count II):
>       Fraud in Connection with Commodity Futures Contracts

Section 4b(a)(1) of the Act, 7 U.S.C. § 6b(a)(1) (2012), makes it unlawful for any person to, in connection with any futures transaction, (A) cheat or defraud or attempt to cheat or defraud another person; (B) willfully to make or cause to be made to another person any false report or statement or willfully to enter or cause to be entered for another person any false record; (C) willfully deceive or attempt to deceive another person by any means whatsoever.  To establish a violation of 7 U.S.C. § 6(b), the Commission must prove that a defendant made a material misrepresentation or omission with scienter.  *CFTC v. Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482, 499, 502 (S.D.N.Y. 2004) (quoting *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002).

A statement is material "if there is a substantial likelihood that a reasonable investor

would consider it important in making an investment decision." *CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in part, rev'd in part on other grounds and remanded sub nom. CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) (citing *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986)).

Misrepresentations and omissions concerning the likelihood or guarantee of profit, the risk of loss, a record of profitability, and trading or investing experience are matters that a reasonable investor would consider fundamentally important to his or her investment decision. *See*, *e.g.*, *Saxe*, 789 F.2d at 110, 112 (noting that statements regarding likelihood of profits and limited risk from futures trading, as well as the nature of the organization handling an account, were material misrepresentations); *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1340 (6th Cir. 1987) (describing as material statements by CTA "regarding expertise, status and ability to 'control' the market, as well as. . . statements as to the structure of the market and the nature of the risk"); *R.J. Fitzgerald*, 310 F.3d at 1332-33 (finding that misrepresentations of profit and risk are material); *CFTC v. Weinberg*, 287 F. Supp. 2d 1100, 1103 (C.D. Cal. 2003) (concluding that a guarantee of profit is a material misrepresentation that constitutes fraud under 7 U.S.C. § 6b). Scienter is a mental state embracing an intent to deceive, manipulate, or defraud, and may be shown by proof of recklessness. *See, e.g.*, *Int'l Fin. Servs.*, 323 F. Supp. 2d 482 at 502.

As alleged in the Complaint, Defendant engaged in a pernicious pattern of deception in which he knowingly made materially false statements and omissions in Craigslist postings and in other communications with the intent to lure customers into granting him access to their futures trading accounts. (*See* Compl. ¶¶ 2-3, 10-24; Vilenskiy Decl. Exs. F & I). When those accounts inevitably experienced losses inconsistent with Defendant's claims, he falsely guaranteed future

profits and promised customers that he would reimburse their losses in order to retain access to their accounts.  (Compl. ¶ 34; Vilenskiy Decl. ¶ 51; Ex. L ¶¶ 26, 28).

Contrary to his statements, Defendant was an unsuccessful trader who routinely lost customers' money by trading WTI crude oil futures.  (Compl. ¶¶ 2, 13, 15, 28, 82; Vilenskiy Decl. ¶¶ 9-10, 41, 64-65; Ex. A; Ex. K; Ex. N ¶¶ 15-6; Ex. R at 71:1-73:7).  In fact, contrary to his misrepresentations to customers, at no time during the Relevant Period did Defendant consistently generate ten percent daily profits (or any consistent profits whatsoever); manage tens of millions of dollars; operate two offices in which he managed multiple traders; or reimburse customers for their losses.  (Compl. ¶¶ 2, 13, 15, 20-22, 24, 28; Vilenskiy Decl. ¶¶ 9-10, 21, 59, 62; Ex. A; Ex. N ¶¶ 5, 11).  Moreover, Defendant intentionally misrepresented his true identity and trading experience, and sought to conceal his activity from FCMs and regulators by failing to disclose to customers that he was required to obtain written investment discretion to operate their accounts.  (Compl. ¶¶ 26-27, 29; Ex. R at 54:9-55:1).  As sufficiently alleged in the Complaint, Defendant's conduct constitutes fraud under 7 U.S.C. § 6b(a)(1).

c.  Defendant Violated 7 U.S.C. § 6*o*(1)(A) and (B) (Count I): Fraud by a Commodity Trading Advisor

Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), prohibits a CTA from using the mails or any means or instrumentality of interstate commerce, directly or indirectly (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.  The elements required to establishing a fraud claim under 7 U.S.C. § 6*o*(1)(A) are "essentially the same" as for a fraud claim under 7 U.S.C. § 6b.  *See Schwartz et. al v. O'Grady*, No. 86-CIV-4243, 1990 WL 156274,

at *16 (S.D.N.Y. Oct. 12, 1990) (citing *First Nat'l Monetary Corp.*, 819 F.2d at 1340 (6th Cir. 1987)).

As discussed above and alleged in the Complaint, Defendant used the mails and other means of interstate commerce to engage in a fraudulent scheme while illegally acting as an unregistered CTA. *See CFTC v. Vartuli*, 228 F. 3d 94, 103 (2d Cir. 2000) (explaining that 7 U.S.C. § 6*o*(1) of the Act applies to all CTAs regardless of registration status, and finding violation by defendant who was not registered with the Commission). Therefore, Defendant's misconduct in violation of 7 U.S.C. § 6b also violated 7 U.S.C. § 6*o*(1).

## 2.    Entry of Default Judgment Against Defendant is Warranted

When deciding whether to grant default judgment, district courts within the Second Circuit consider the following factors: 1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to the plaintiff's claims; and 3) the level of prejudice the non-defaulting party will suffer if default judgment is not entered. *See, e.g.*, *O'Callaghan v. Sifre*, 242 F.R.D. 69, 70 (S.D.N.Y. 2007); *Mason Tenders Dist. Council v. Duce Const. Corp.*, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003). The decision to grant a motion for default judgment lies within the sound discretion of the district court. *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116, 120 (2d Cir. 2015); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999).

Here, all three factors weigh strongly in favor of entering default judgment against Defendant.

    a. <u>Defendant's Default Was Willful</u>

There is no dispute that Defendant's default was willful.  On March 8, 2018, Plaintiff's process server personally served Defendant with the Summons, Complaint, and all accompanying papers, which Defendant has admitted to receiving.  (*See* Conf. Tr. at 19:2-3). After being served with the Complaint, Defendant has on two occasions requested that the Court enter default judgment against him.  On or about May 1, 2018, Defendant requested in a letter to the Court that it "just file judgment by default and demand for the relief in the complaint."  (ECF No. 27 at 2).  On May 21, 2018, Defendant appeared at the Conference and requested that the Court *sua sponte* hold him in default.  (*See* Conf. Tr. at 7:4-12).  When the Court explained that it could not enter such a remedy at that time and asked Defendant whether he wanted an extension of time to answer the Complaint, Defendant declined.  (*See id*. 49:11-13).

Consequently, the Court informed Defendant that "the plaintiff may . . . seek entry of a default judgment on the basis of the fact that you are *intentionally* choosing not to defend yourself in this case."  (Conf. Tr. 49:15-18 (emphasis added)).  Defendant's willful failure to defend himself in this action continued through discovery:  despite being served with all discovery papers, Defendant did not respond to any of Plaintiff's interrogatories, requests for documents, or RFAs, and Defendant did not participate in any of Plaintiff's depositions.  This conduct supports entry of default judgment.  *See, e.g.*, *Au Bon Pain Corp. v. Artect, Inc.*, 653 F. 2d 61, 65 (2d Cir. 1981) (finding that failing to appear for a deposition, giving vague and unresponsive answers to interrogatories, and failing to appear for trial were sufficient to establish that defendant had "failed to plead or otherwise defend" under Rule 55).

b.    Defendant Has No Meritorious Defenses to the Commission's Claims

To show a meritorious defense, a defendant need not establish his defense conclusively, but "must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (citation and quotations omitted) (deciding motion to vacate default judgment); *see also New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("[A] defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense.") (internal quotations omitted).

Defendant has not presented any facts to the Court—or even made any conclusory denials—that could in any way constitute a defense to the claims alleged by the Commission. Default judgment is thus proper.  *McNulty*, 137 F.3d at 740; *Green*, 420 F.3d at 110.

c.    The Commission Will Suffer Prejudice If Default Judgment Is Not Entered

The Act is "a remedial statute that serves the crucial purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived."  *Loginovskaya v. Batratchenko*, 936 F. Supp. 2d 357, 363 (S.D.N.Y. 2013), *aff'd* 764 F.3d 266 (2d Cir. 2014) (internal quotations omitted); *cf. Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (describing CFTC as "'the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in the commodity futures markets'"). The purpose of the Act is served through several antifraud provisions, including those codified at 7 U.S.C. §§ 6b and 6*o*(1).  *See Loginovskaya*, 936 F. Supp. 2d at 363.

The Commission will suffer prejudice if default judgment is not entered against Defendant because it will be unable to fulfill its congressional mandate by obtaining judicial resolution of its claims that Defendant has defrauded customers while failing to register with the

15

Commission.  *See, e.g.*, *H. Daya Intern. Co., Ltd. v. Do Denim LLC*, No. 11 Civ. 4028, 2012 WL 2524729, at *5 (S.D.N.Y. June 29, 2012) (finding prejudice to plaintiff where there was "a lack of additional steps available to secure relief in this Court"); *United States v. Myers,* 236 F. Supp. 3d 702, 708-09 (E.D.N.Y. 2017) (granting default judgment where federal government would otherwise have "no alternative legal redress" to recover unpaid taxes and penalties); *SEC v. Fortitude Grp., Inc.*, C.A. No. 16-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (entering default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if request were denied).

Defendant has refused to answer or otherwise defend the Complaint, has repeatedly requested that a default judgment be entered against him, and has declined to engage in discovery, leaving the Commission with no recourse to resolve its case other than entry of default judgment under Federal Rule of Civil Procedure 55(b).  Precluding the Commission from seeking judicial resolution of its claims is particularly problematic here, because by continuing to engage in fraudulent solicitation and trading *after* the Commission filed its Complaint, Defendant has signaled that his unlawful actions will not be deterred absent a Court judgment. *See Robinson v. Sanctuary Music*, 383 Fed. App'x. 54, 58 (2d Cir. 2010) (finding prejudice to the non-defaulting party where a delay would "provide greater opportunity for fraud" to occur) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)).  Therefore, failure to enter default judgment would frustrate the Commission's important mission of protecting investors in the commodity futures markets.  *See Loginovskaya*, 936 F. Supp. 2d at 363; *see also Stephen Bronte, Advisors*, 90 F. App'x at 252; *Fortitude Grp.*, 2017 WL 818604, at *2.  And critically, without a default judgment, the Commission will not be able to recoup any customer losses through restitution.

16

C.      **Remedies and Damages**

1.      **Permanent Injunction**

The Commission may seek permanent injunctive relief "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation or order thereunder."  Section 6c of the Act, 7 U.S.C. § 13a-1(a) (2012).  Under such circumstances, a district court may issue a permanent injunction without considering traditional equitable factors such as inadequacy of other remedies or irreparable harm.  *CFTC v. Morgan, Harris & Scott, Ltd.*, 484 F. Supp. 669, 676-77 (S.D.N.Y. 1979); *see also CFTC v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978).  The Commission need only show that the defendant violated the Act and is reasonably likely to commit future violations.  *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir. 1986); *CFTC v. U.S. Metals Depository Co.*, 468 F. Supp. 1149, 1161-62 (S.D.N.Y. 1979).

The Court may infer a likelihood of future violations from a defendant's past unlawful conduct.  *Am. Bd. of Trade*, 803 F.2d at 1251; *see also Morgan*, 484 F. Supp. at 677 (holding that "[w]hether such an inference should be drawn 'depends on the totality of the circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant.'").

To determine whether an injunction is appropriate, courts also consider "the nature of the past misconduct, whether the defendant's business interests place him in a position where future violations are possible, the persistence of the violating conduct, and whether the defendant has maintained that his conduct was blameless."  *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 454 (D.N.J. 2000).

The scope of the injunctive relief can be tailored to meet the circumstances of the violations shown.  For example, upon the Commission's showing of a violation, courts have entered permanent injunctions against future violations of the Act.  *See, e.g., Am. Bd. of Trade*, 803 F.2d at 1244-45, 1250-51 (affirming judgment enjoining defendants from engaging in conduct that constituted violations of the Act).  Courts also have entered broader injunctions permanently prohibiting defendants from registering with the Commission and engaging in any commodity trading activity.  *See, e.g., CFTC v. Kelly*, 736 F. Supp. 2d 801, 804 (S.D.N.Y. 2010) (declining to modify order permanently enjoining defendant's participation in the futures industry and registration with the CFTC); *CFTC v. McDonnell*, 2018 WL 4090784, at *4 (E.D.N.Y. Aug. 28, 2018) (imposing permanent trading and registration bans where defendant used pseudonyms, lied about his place of business, and defrauded customers out of hundreds of thousands of dollars); *Rosenberg*, 85 F. Supp. 2d at 454-55 (permanently enjoining defendant from trading commodities on behalf of others).

Defendant's repeated fraudulent solicitation of customers, without being registered with the Commission, warrants entry of a permanent injunction, including permanent registration and trading bans.  It is undisputed that Defendant intentionally made false statements and omissions to customers to induce them to provide him with access to their futures trading accounts.  For example, Defendant (i) guaranteed returns of ten percent per day when he knew he was trading unprofitably and incurring heavy trading losses; (ii) sent false trading reports to customers that misrepresented his trading performance and assets under management; (iii) misrepresented to customers that he would reimburse them for any losses; and (iv) provided pseudonyms to customers to conceal his true identity.  (Compl. ¶¶ 2, 13, 15, 20, 22, 24, 28; Vilenskiy Decl. ¶¶ 10, 21, 28, 59, 62; Ex. G ¶ 9; Ex. J at 9; Ex. L ¶¶ 26, 28; Ex. N ¶¶ 5, 11; Ex. R at 41:19–42:9).

Further, Defendant omitted to disclose to customers that he was not registered with the Commission as a CTA as required, or that he was required to obtain their written authorization before he could trade on their behalf.  (*See id*. ¶¶ 2, 27, 29).

Moreover, Defendant's wrongful conduct was intentional, extensive, and is unlikely to be deterred absent an order by this Court.  Despite consistently losing money trading futures, Defendant nevertheless solicited at least forty-one (41) customers during the Relevant Period. (Vilenskiy Decl. ¶¶ 9-10 & n.1; Ex. A).  Defendant sought to evade detection by regulatory authorities, and continued to trade futures and advise customers on futures trading even after being served with the Complaint.  (Vilenskiy Decl. ¶¶ 9-10 & n.1; Ex. A).  Accordingly, in order to prevent Defendant from continuing to fraudulently solicit customers and otherwise continue his history of illegal conduct, the Commission requests that Defendant be permanently enjoined by the Court from future violations of the Act, from applying for registration with the Commission, and from trading commodities in any capacity, as set forth in the Proposed Order.

### 2.      Restitution, Civil Monetary Penalty, and Post-Judgment Interest

The Court has discretion over whether to conduct a hearing before deciding the default judgment motion.  *Verizon Directories Corp. v. AMCAR Transp. Corp.*, No. 05-CIV-08867, 2008 WL 4891244, at *2 (S.D.N.Y. Nov. 12, 2008); *Greathouse*, 784 F.3d at 121 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009); FED. R. CIV. P. 55(b)(2)).  The Court need not conduct an inquest into damages if it has "ensured that there is a basis for the damages specified in the default judgment."  *Id.* (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir.1989)).  Accordingly, the Court may rely on a plaintiff's affidavits or documentary evidence in determining the reasonableness of the damages requested.  *See, e.g.*, *id.*; *see also Fustok*, 873 F.2d at 40.

a.      Restitution

Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2012), permits the

Commission to seek equitable remedies for violations of the Act, including "restitution to

persons who have sustained losses proximately caused by such violation (in the amount of such

losses)."  In turn, district courts routinely permit the Commission to seek restitution on behalf of

defrauded customers.  *Id.* (noting that courts may order a defendant to pay pre- and post-

judgment interest on restitution obligation).

During the Relevant Period, Defendant intentionally solicited and traded futures on

behalf of members of the general public, through the use of false statements and omissions,

without being registered with the Commission.  As a result of this fraudulent scheme, Defendant

proximately caused customers to incur losses of at least $591,570.  (Vilenskiy Decl. ¶ 9; Ex. A).

Given that this figure can be determined with precision, on the basis of trading and bank

statements submitted to the Court with Plaintiff's default judgment motion, no inquest into

damages is required.  Accordingly, Defendant should be ordered to pay $596,424.63 in

restitution, which reflects the total trading losses to Defendant's customers, as well as the amount

Defendant received in fees.

b.      Civil Monetary Penalty

Section 6c(d)(1)(A) of the Act, 7 U.S.C. 13a-1(d)(1)(A) (2012), and Regulation

143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2018), provide that "the Commission may seek

and the Court shall have jurisdiction to impose, on a proper showing, on any person found in the

action to have committed any violation [of the Act,] a civil penalty in the amount of not more

than the greater of $177,501 or triple the monetary gain to the person for each violation."  *See*

*also CFTC v. Levy*, 541 F.3d 1102, 1111 (11th Cir. 2008), *reh'g denied en banc*, 309 F. App'x

385 (11th Cir. 2008) (noting that the number of violations for purpose of calculating civil monetary penalties is not limited to the number of counts in the complaint where the Commission's complaint alleges that "[e]ach material representation and omission . . . is a separate and distinct violation of" the Act) (internal quotation marks and citation omitted)); *SEC v. Johnson*, No. 03 Civ. 177, 2006 WL 2053379, at *10 (S.D.N.Y. July 24, 2006), *reconsideration denied*, 2006 WL 2548458 (S.D.N.Y. Aug. 31, 2006) (assessing separate civil monetary penalty against defendant for each fraudulent report).  Courts have broad discretion is fashioning an appropriate penalty.  *CFTC v. Yorkshire Grp., Inc.*, No. 13-CV-5323, 2016 WL 8256380, at *6 (S.D.N.Y. Aug. 19, 2016).

Defendant fraudulently solicited at least forty-one (41) customers to trade WTI crude oil futures.  (Vilenskiy Decl. ¶¶ 9-10 & n.1; Ex. A).  Given that each act of fraud against each individual customer is a separate violation of the Act, 7 U.S.C. 13a-1(d)(1)(A) and 17 C.F.R. § 143.8(a)(4)(ii)(B) give the Commission authority to seek as much as $7,277,541 in civil monetary penalties against Defendant (41 victims multiplied by the statutory maximum penalty of $177,501 per violation = $7,277,541).[6]  Nonetheless, and despite Defendant's egregious fraud, including his willful fraudulent acts *after* the filing of the Complaint, the Commission requests that the Court order Defendant to pay a civil monetary penalty of $1,500,000.  *Cf. CFTC v. Dean*, No. 18-cv-00345, 2018 WL 4573029, at *8, 13 (E.D.N.Y. July 9, 2018) (ordering defendants to pay $1,497,792.12, or three times the gross amount of customers' principal investments, for violations of 7 U.S.C. §§ 6b, 6*o*(1) and 6m(1)).  However, the Commission recognizes that the determination of a civil monetary penalty is ultimately within the sound discretion of the district court.  7 U.S.C. § 13a-1(d)(1)(A); *Yorkshire*, 2016 WL 8256380, at *6.

---

[6] Despite the magnitude of this figure, it may actually undercount the full penalty Defendant could be ordered to pay under the Act, as Defendant likely committed *multiple* acts of fraud with respect to each of his 41 known victims.

c.   <u>Post-Judgment Interest</u>

The Commission is entitled to, and hereby seeks, post-judgment interest on any

restitution and civil monetary penalty ordered by this Court, which accrues at the weekly average

1-year constant maturity Treasury yield for the calendar week preceding the date of judgment.

28 U.S.C. § 1961(a) (2012).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant the Motion for Default Judgment, enter

final judgment by default against Defendant Lon Olen Friedrichsen, and issue a final judgment in

the form of the proposed Order submitted herewith.

Dated:  November 1, 2018                   Respectfully submitted,

      s/   Daniel J. Grimm
      Daniel J. Grimm (*pro hac vice*)
      A. Daniel Ullman II
      Paul G. Hayeck (*pro hac vice*)
      Division of Enforcement
      1155 21st Street, N.W.
      Washington, DC 20581
      (202) 418-5489 (telephone)
      (202) 418-5523 (facsimile)

      Michael R. Berlowitz
      140 Broadway, 19th Floor
      New York, NY 10005
      (646) 746-9759 (telephone)
      (646) 746-9940 (facsimile)

      **ATTORNEYS FOR PLAINTIFF**
      **COMMODITY FUTURES TRADING**
      **COMMISSION**