**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION | Civil Action No. 18-cv-1830 (GHW) |
| Plaintiff, | |
| | **[PROPOSED] ORDER AND JUDGMENT BY DEFAULT AGAINST DEFENDANT LON OLEN FRIEDRICHSEN** |
| v. | |
| LON OLEN FRIEDRICHSEN | **ECF CASE** |
| Defendant. | |

Before the Court is Plaintiff Commodity Futures Trading Commission's ("Plaintiff," "CFTC," or "Commission") Order to Show Cause for Default Judgment Against Defendant Lon Olen Friedrichsen ("Defendant" or "Friedrichsen"). For the reasons stated below, and good cause having been shown, judgment by default is hereby entered against Defendant pursuant to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b).

## I.      BACKGROUND

1.      On March 2, 2018, Plaintiff filed a Summons (ECF No. 8) and Complaint (ECF No. 9) against Defendant, alleging violations of Sections 4*o*(1), 4b(a)(1), and 4m(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6*o*(1), 6b(a)(1), 6m(1) (2012).  On March 8, 2018, Plaintiff's process server personally served Defendant with the Summons and Complaint at Defendant's residence in Alton, Iowa.  (*See* ECF No. 12).

2. Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i) and the Court's Order dated March 13, 2018 (ECF No. 12), Defendant was required to answer or otherwise respond to the Complaint by March 29, 2018.  Defendant failed to do so.

3. On or about May 1, 2018, Defendant wrote in a letter to the Court, "I beg of you to just file judgment by default and demand for the relief in the complaint."  (ECF No. 27 at 2).

4. On May 21, 2018, Defendant appeared at the Initial Pretrial Conference and represented to the Court that he did not intend to defend this action.  (Conf. Tr. at 25:7-15; 12:8-9; 25:17-20).  Defendant further requested that the Court enter a default judgment against him.  (*Id*. at 7:4-12).

5. On May 21, 2018, the Court set a Civil Management Plan and Scheduling Order (the "Scheduling Order," ECF No. 28) in this action.  Pursuant to the Scheduling Order, Plaintiff propounded discovery requests upon Defendant, including interrogatories and requests for admission.  Plaintiff represents that Defendant failed to respond to any of Plaintiff's discovery requests, or otherwise participate in discovery.  (Pl. Mem. in Supp. of Def. Judg., dated November 1, 2018, at 3, 14, 16).

6. On October 25, 2018, Plaintiff requested a Clerk's Certificate of Default pursuant to Local Civil Rule 55.1 and Federal Rule of Civil Procedure 55(a) (ECF No. 35), which the Clerk of the Court issued that same day.  (ECF No. 37).

## II.    COMPLAINT ALLEGATIONS AND SUPPORTING EVIDENCE

7. According to the Complaint, the factual allegations of which the Court takes as true for purposes of default judgment, from at least June 25, 2014, through June 30, 2018 (the "Relevant Period"), Defendant fraudulently solicited customers to permit

Defendant to trade West Texas Intermediate ("WTI") crude oil futures contracts on their behalf, in violation of Sections 4o(1) and 4b(a)(1) of the Act, 7 U.S.C. §§ 6o(1), 6b(a)(1) (2012). (Compl. ¶¶ 10-29) In doing so, Defendant acted as an unregistered commodity trading advisor ("CTA"), in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012). (Compl. ¶¶ 30-40).

8.      During the Relevant Period, Defendant solicited customers in this jurisdiction and elsewhere via Craigslist.com ("Craigslist") advertisements, telephone, and email. (Compl. ¶¶ 3, 10-11, 14, 16, 21, 31-2, 38-9, 43-4, 53).

9.      In his solicitations, Defendant offered to trade WTI crude oil futures on behalf of customers in exchange for 50% of any trading profits he generated. (*See, e.g.*, Compl. ¶¶ 11, 16, 32; Vilenskiy Decl. ¶¶ 21.a, 48; Ex. F; Ex. L ¶ 17).[1] Defendant directed customers to provide him with the login credentials to their personal trading accounts, which were held at various futures commission merchants. (*See, e.g.*, Compl. ¶ 29; Vilenskiy Decl. ¶¶ 39, 63; Ex. G ¶ 11; Ex. N ¶ 13). Once Defendant obtained customers' trading account login credentials, he accessed their accounts and placed WTI futures trades. (Compl. ¶¶ 2, 7, 13, 29, 34-7; Vilenskiy Decl. ¶¶ 9, 12.i, 79, 86, 89, 95; Ex. R at 41:12-18; 104:7-18; 111:4-18; Ex. T).

10.     During the Relevant Period, Defendant made materially false and misleading statements to solicit customers. (Compl. ¶¶ 10-29). Among other things, Defendant knowingly and falsely guaranteed customers that they would receive daily trading profits of at least 10 percent if they permitted Defendant to trade their accounts. (Compl. ¶¶ 11, 32; Vilenskiy Decl. ¶¶ 10, 21, 59, 62; Ex. F; Ex. G ¶ 9; Ex. N ¶¶ 5, 11).

---

[1] All exhibits referenced herein are attached to the Declaration of Dmitriy Vilenskiy ("Vilenskiy Decl."), dated October 29, 2018.

Defendant further knowingly misrepresented his trading experience, and overstated by millions of dollars the amount of customer money he managed.  (*Id*. ¶¶ 11, 14; Vilenskiy Decl. ¶¶ 27-28, 59, 62; Ex. G ¶¶ 7-8; Ex. N ¶¶ 5, 11).  Defendant also falsely represented that he operated a team of traders with officers in Sioux City, Iowa and Denver, Colorado, and that he was registered with the Commission.  (Compl. ¶¶ 2, 18-19, 24, 27, 40, 53; Vilenskiy Decl. ¶ 46; Ex. L. ¶¶ 7-9, 11; Ex. R at 34:3-11).

11.     Defendant fabricated futures trading reports that falsely reflected highly profitable trading and tens of millions of dollars under Defendant's management. (Compl. ¶¶ 21, 48; Vilenskiy Decl. ¶¶ 28, 62; Ex. G ¶ 9; Ex. N ¶ 11).  In reality, Defendant did not manage tens of millions of dollars in assets and the trades he executed in customers' accounts generated excessive losses.  (Compl. ¶ 28; Vilenskiy Decl. ¶¶ 9-10, 28, 62, 64-65, 82; Ex. G ¶ 9; Ex. A; Ex. N ¶¶ 11, 15-16; Ex. R. at 71:1-73:7).

12.     Defendant was never registered with the Commission as a CTA despite acting at all times during the Relevant Period as a CTA.  (Compl. ¶¶ 18-19, 24; Vilenkskiy Decl. ¶ 14; Ex. C).

## III.     THE COMPLAINT ADEQUATELY PLEADS ITS CAUSES OF ACTION

### A.   Plaintiff Has Adequately Alleged that Defendant Violated 7 U.S.C. § 6m(1) (Count III): Acting as an Unregistered Commodity Trading Advisor

13.     Section 1a(12)(A)(i) of the Act, 7 U.S.C. § 6m(1) (2012), defines a CTA, in relevant part, as any person who

> for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic, media, as the value of or the advisability of trading in–(I) any contract of sale of a commodity for future delivery, security futures product or swap . . . .

4

14.     Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), states that

It shall be unlawful for any commodity trading advisor or commodity pool operator, unless registered under this Act, to make use of the mails or any means or instrumentality of interstate commerce in connection with his business as such commodity trading advisor or commodity pool operator . . ..

15.     During the Relevant Period, Defendant used the Internet, telephone, and other means and instrumentalities of interstate commerce to act as a CTA without being registered with the Commission as required.  (Compl. ¶¶ 2-3, 10-40; Vilenskiy Decl. ¶¶ 21-22, 26, 34, 37, 47, 56, 60, 62; Ex. C; Ex. F; Ex. G ¶ 5; Ex. I; Ex. L ¶ 15; Ex. N ¶¶ 11, 17).  Among other activity, Defendant, without being registered with the Commission as a CTA, solicited members of the public via Craigslist posts and other means, traded customer funds in futures contracts, and received compensation from customers for trading their accounts.  (Compl. ¶¶ 2-3, 10-40; Vilenskiy Decl. ¶¶ 14, 21, 26, 29, 34, 35, 39, 56, 63; Ex. C; Ex. G ¶ 11; Ex. I; Ex. N ¶ 13).

16.     Accordingly, the Complaint has adequately stated a claim against the Defendant for acting as an unregistered CTA in violation of Section 1a(12)(A)(i) of the Act, 7 U.S.C. § 6m(1) (2012).

**B.   Plaintiff Has Adequately Alleged that Defendant Violated 7 U.S.C. § 6b(a)(1) (Count II): Fraud in Connection with Commodity Futures Contracts**

17.     Section 4b(a)(1) of the Act, 7 U.S.C. § 6b(a)(1) (2012), states that

It shall be unlawful–(1) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person . . . (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract . . . .

18.     To establish a violation of 7 U.S.C. § 6(b), the Commission must show that a defendant made a material misrepresentation or omission with scienter. *CFTC v. Int'l Fin. Servs. (N.Y.), Inc.*, 323 F. Supp. 2d 482, 499, 502 (S.D.N.Y. 2004) (quoting *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1328 (11th Cir. 2002).

19.     A statement is material "if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *CFTC v. AVCO Fin. Corp.*, 28 F. Supp. 2d 104, 115 (S.D.N.Y. 1998), *aff'd in part, rev'd in part on other grounds and remanded sub nom. CFTC v. Vartuli*, 228 F.3d 94 (2d Cir. 2000) (citing *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986)).

20.     Scienter is a mental state embracing an intent to deceive, manipulate, or defraud, and may be shown by proof of recklessness. *See, e.g.*, *Int'l Fin. Servs.*, 323 F. Supp. 2d 482 at 502.

21.     Misrepresentations and omissions concerning the likelihood or guarantee of profit, the risk of loss, and trading experience are matters that a reasonable investor would consider fundamentally important to an investment decision. *See*, *e.g.*, *Saxe*, 789 F.2d at 110, 112; *First Nat'l Monetary Corp. v. Weinberger*, 819 F.2d 1334, 1340 (6th Cir. 1987); *R.J. Fitzgerald*, 310 F.3d at 1332-33.

22.     Throughout the Relevant Period, Defendant knowingly made materially false statements and omissions in Craigslist postings and in other communications with the intent to lure customers into granting him access to their futures trading accounts. (*See* Compl. ¶¶ 2-3, 10-24; Vilenskiy Decl. ¶¶ 21, 27, 36, 59, 78, 80, 88; Ex. F; Ex. G ¶¶ 5, 7-9; Ex. I; Ex. N ¶ 5).

23.     Among other material false statements, Defendant knowingly misrepresented that (i) customers would receive guaranteed daily trading profits of 10% by allowing Defendant to trade their accounts; (ii) managed tens of millions of dollars in customer funds; (iii) operated two offices in which he managed multiple commodity futures traders; (iv) was registered with the Commission as required; and (v) would repay customers for commodity trading losses.  (Compl. ¶¶ 2, 13, 15, 20, 22, 24, 26-7, 28, 34; Vilenskiy Decl. ¶¶ 21, 27, 36, 51, 59, 78, 80, 88; Ex. F; Ex. G ¶¶ 5, 7-9; Ex. I; Ex. L ¶¶ 26, 28; Ex. N ¶ 5).

24.     Among other material omissions, Defendant failed to disclose that he was required to obtain written discretion prior to trading customers' commodity accounts (Compl. ¶ 29).

25.     Accordingly, Plaintiff has stated a claim against Defendant for fraud in connection with commodity futures contracts in violation of Section 4b(a)(1) of the Act, 7 U.S.C. § 6b(a)(1) (2012).

**C.  Plaintiff Has Adequately Alleged that Defendant Violated 7 U.S.C. § 6*o*(1)(A) and (B) (Count I): Fraud by a Commodity Trading Advisor**

26.     Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012), states that

> It shall be unlawful for a commodity trading advisor . . . by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly–(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

27.     The elements required to establishing a fraud claim under 7 U.S.C. § 6*o*(1)(A) are "essentially the same" as for a fraud claim under 7 U.S.C. § 6b.  *See Schwartz et. al v. O'Grady*, No. 86-CIV-4243, 1990 WL 156274, at *16 (S.D.N.Y. Oct. 12, 1990) (citing *First Nat'l Monetary Corp.* , 819 F.2d at 1340 (6th Cir. 1987)).  As

discussed above, Defendant used the mails and other means of interstate commerce to engage in a fraudulent scheme while illegally acting as an unregistered CTA.  (Compl. ¶¶ 1-3, 10-40; Vilenskiy Decl. ¶¶ 21-22, 26, 34, 37, 47, 56, 60, 62; Ex. C; Ex. F; Ex. G ¶ 5; Ex. I; Ex. L ¶ 15; Ex. N ¶¶ 11, 17).

28.    As the Complaint adequately states a claim against Defendant for violating 7 U.S.C. § 6b (*see* above), so too does it adequately state a claim against Defendant for violating Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1).

29.    Accordingly, Plaintiff has stated a claim against Defendant for fraud by a CTA in violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012).

## IV.    DEFAULT JUDGMENT IS PROPER

30.    Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b) authorize plaintiffs to seek, and the Court to enter, default judgment against a party who has failed to plead or otherwise defend an action.

31.    The Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2012).  (*See* Compl. ¶ 6).  Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 4c(e) (2012), because Defendant committed the acts alleged in the Complaint within this District.  (*See* Compl. ¶ 7; Vilenskiy Decl. ¶¶ 21, 35; Ex. I).

32.    The record reveals that Defendant's default was willful.  On two occasions, Defendant requested that the Court enter default judgment against him.  On or about May 1, 2018, Defendant wrote in a letter to the Court, "I beg of you to just file judgment by default and demand for the relief in the complaint."  (ECF No. 27 at 2).  In addition, during the Initial Pretrial Conference of May 21, 2018, Defendant

acknowledged that "funds were lost, and . . . I'd like to put in a motion to have default judgment." (Conf. Tr. 13:8-10).

33.     Defendant has not shown a meritorious defense to the action.  To show a meritorious defense, a defendant "must present evidence of facts that, if proven at trial, would constitute a complete defense."  *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (citation and quotations omitted).  As Defendant has presented no facts to the Court or denied any allegation of the Complaint, Defendant has not shown a meritorious defense to the action.

34.     Plaintiff will suffer prejudice if default judgment is not entered.  Congress has charged Plaintiff with enforcing the Act to protect customers in the commodity futures markets.  *See Loginovskaya v. Batratchenko*, 936 F. Supp. 2d 357, 363 (S.D.N.Y. 2013), *aff'd* 764 F.3d 266 (2d Cir. 2014) (internal quotations omitted) (explaining that the Act is "a remedial statute that serves the crucial purpose of protecting the innocent individual investor . . . from being misled or deceived.").  Absent default judgment, Plaintiff will be frustrated in is ability to fulfill its mandate, prejudicing Plaintiff.  *See SEC v. Fortitude Grp., Inc.*, C.A. No. 16-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (entering default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" absent judgment).

35.     Under Local Rule 55.2(b) and Federal Rule of Civil Procedure 55(b), the Court takes as true the allegations of the Complaint listed in paragraphs 1-40.

36.     Accordingly, the Court hereby enters default judgment against Defendant pursuant to Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b) and orders the relief set forth below.

## V.   RELIEF GRANTED

### A.   Permanent Injunction and Trading Bans

37.   The Commission may seek a permanent injunction "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation or order thereunder."  Section 6c of the Act, 7 U.S.C. § 13a-1(a) (2012).

38.   To obtain a permanent injunction, Plaintiff must show that Defendant violated the Act and is reasonably likely to commit future violations.  *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir. 1986); *CFTC v. U.S. Metals Depository Co.*, 468 F. Supp. 1149, 1161-62 (S.D.N.Y. 1979).  The Court may infer a likelihood of future violations from Defendant's past unlawful conduct.  *Am. Bd. of Trade*, 803 F.2d at 1251.

39.   Defendant, while acting as an unregistered CTA, knowingly and willfully caused at least 41 customers to suffer losses of at least $591,570 during the Relevant Period, in violation of Sections 1a(12)(A)(i), 4b(a)(1), and 4o(1) of the Act, 7 U.S.C. §§ 6m(1), 6b(a)(1), 6o(1)(A) (2012).  Defendant's unlawful conduct during the Relevant Period, as well as his efforts to conceal his wrongdoing from customers, makes it reasonably likely that Defendant will commit additional violations of the Act unless restrained by this Court.

40.   Accordingly, Defendant and any of his agents, servants, employees, assigns, attorneys, holding companies, alter egos, and persons in active concert or participation with him, including any of their successors, directly or indirectly, are permanently restrained, enjoined, and prohibited from directly or indirectly:

(i)        engaging in conduct in violation of Sections 1a(12)(A)(i), 4b(a)(1), and 4o(1) of the Act, 7 U.S.C. §§ 6m(1), 6b(a)(1), 6o(1)(A) (2012);

(ii)        trading on or subject to the rules of any registered entity (as that term is defined in Section la(40) of the Act, 7 U.S.C. § la(40) (2012));

(iii)        entering into any transaction involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2018)) for his own personal account or for any account in which he has a direct or indirect interest;

(iv)        having any commodity interests traded on his behalf;

(v)        controlling or directing trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(vi)        soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vii)        applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018);

(viii)        acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2018)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and

(viv)        engaging in any business activities related to commodity interests.

B.    **Restitution**

41.    Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a-1(d)(3)(A) (2012),

authorizes the CFTC to seek, and the Court to impose, equitable remedies for violations

of the Act, including "restitution to persons who have sustained losses proximately

caused by such violation (in the amount of such losses)."

42.    Defendant's fraudulent acts proximately caused at least 41 customers to

incur losses of at least $591,570 during the Relevant Period.  (*See* Vilenskiy Decl. ¶¶ 9-

10, 23; Ex. A).

43.    Accordingly, Defendant is ordered to pay restitution in the amount of

$591,570 (five hundred ninety-one thousand five hundred seventy dollars), plus post-

judgment interest thereon (the "Restitution Obligation").  Post-judgment interest shall

accrue beginning on the date of entry of this Order and shall be determined pursuant to 28

U.S.C. § 1961 (2012).

44.    The Court appoints the National Futures Association ("NFA") as Monitor

to distribute payments made against the Restitution Obligation to Defendant's customers.

The Monitor shall collect restitution payments from Defendant and make distributions as

set forth below.  Because the Monitor is acting as an officer of this Court in performing

these services, NFA shall not be liable for any action or inaction arising from NFA's

appointment as Monitor, other than actions involving fraud.

45.    Defendant shall make Restitution Obligation payments under this Order to

the Monitor in the name of "Friedrichsen Restitution Fund" and shall send such payments

by electronic funds transfer, or by U.S. postal money order, certified check, bank

cashier's check, or bank money order to the Office of Administration, National Futures

Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606,

accompanied by a cover letter identifying Defendant and the name and docket number of

this proceeding.  Defendant shall simultaneously transmit copies of the cover letter and

the form of payment to the Chief Financial Officer, Commodity Futures Trading

Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

46.    The Monitor shall oversee the Restitution Obligation and shall have

discretion to determine the manner of distribution of such funds in an equitable fashion to

Defendant's customers identified by the CFTC, or may defer distribution until such time

as the Monitor deems appropriate.  In the event that the amount of Restitution Obligation

payments to the Monitor are of a *de minimis* nature such that the Monitor determines that

the administrative cost of making a distribution to eligible pool participants is

impractical, the Monitor may, in its discretion, treat such restitution payments as civil

monetary penalty payments, which the Monitor shall forward to the CFTC pursuant to the

instructions for civil monetary penalty payments set forth below.

47.    Defendant shall cooperate with the Monitor as appropriate to provide such

information as the Monitor deems necessary and appropriate to identify Defendant's

customers to whom the Monitor, in its sole discretion, may determine to include in any

plan for distribution of any Restitution Obligation payments.  Defendant shall execute

any documents necessary to release funds that he holds in any repository, bank,

investment, or other financial institution, wherever located, in order to make partial or

total payment toward the Restitution Obligation.

48.    The Monitor shall provide the CFTC at the beginning of each calendar

year with a report detailing the disbursement of funds to Defendant's customers during

the previous year.  The Monitor shall transmit this report accompanied by a cover letter

identifying the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

49.     The amounts payable to each customer shall not limit the ability of any pool participant to prove that a greater amount is owed from Defendant or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

50.     Pursuant to Federal Rule of Civil Procedure 71, each customer of Defendant who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendant, to ensure continued compliance with any provision of this Order, and to hold Defendant in contempt for any violations of any provision of this Order.

51.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**C.     Civil Monetary Penalty**

52.     Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2018), authorize the CFTC to seek a civil monetary penalty equal to triple Defendant's monetary gain from each violation of the Act or Regulations, or $177,501 per violation, whichever is greater.  The Court has broad discretion is fashioning an appropriate penalty.  *CFTC v. Yorkshire Grp., Inc.*, No. 13-CV-5323, 2016 WL 8256380, at *6 (S.D.N.Y. Aug. 19, 2016).

53.     Defendant engaged in a fraudulent scheme that caused at least 41 customers to incur at least $591,570 in trading losses during the Relevant Period. (Compl. ¶¶ 1-3, 10-29; Vilenskiy Decl. ¶ 9; Ex. A).  Given the facts and evidence presented to the Court, a civil monetary penalty of $1,500,000 (one million, five hundred thousand dollars) is appropriate in this case.

54.     Accordingly, Defendant is ordered to pay, on a joint and several basis, a civil monetary penalty in the amount of $1,500,000 (one million five hundred thousand dollars), plus post-judgment interest thereon ("CMP Obligation").  Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

55.     Defendant shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact the CFTC at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany payment of the CMP Obligation with a

cover letter identifying Defendant and the name and docket number of this proceeding.

Defendant shall simultaneously transmit copies of the cover letter and the form of

payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

**D.      Miscellaneous Provisions**

56.    Partial Satisfaction:  Acceptance by the CFTC or the Monitor of any

partial payment of the Restitution Obligation or the CMP Obligation shall not be deemed

a waiver of Defendant's obligation to make further payments pursuant to this Order, or a

waiver of the CFTC's right to seek to compel payment of any remaining balance.

57.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable

relief provisions of this Order shall be binding upon Defendant, upon any person under his

authority or control, and upon any person who receives actual notice of this Order, by

personal service, email, facsimile or otherwise insofar as he or she is acting in active

concert or participation with Defendant.

58.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction

of this action to ensure compliance with this Order and for all other purposes related to

this action, including any motion by Defendant to modify, or for relief from, the terms of

this Order.

*      *      *

There being no just reason for delay, the Clerk of the Court is hereby instructed to enter this Order and Judgment by Default Against Defendant Lon Olen Friedrichsen forthwith and without further notice.

**SO ORDERED**, this _____ day of _____, 2018.


_____
Gregory H. Woods
United States District Judge